UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JASON SCHMIDT,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF SEATTLE (SPD), et al.,<br><br>Defendants. | C08-105Z<br><br>ORDER |

THIS MATTER comes before the Court on defendants' motion for partial summary judgment, plaintiff's cross-motion for partial summary judgment, and defendants' motion to strike plaintiff's untimely response and cross-motion. Having reviewed all papers filed in support of and in opposition to the various motions, the Court does hereby order as follows:

(1) Defendants' motion to strike, docket no. 29, plaintiff's untimely response and cross-motion is DENIED;

(2) Defendants' motion for partial summary judgment, docket no. 19, is GRANTED;

(3) Plaintiff's cross-motion for partial summary judgment, docket no. 27, is DENIED;

(4) Plaintiff's state law claims are DISMISSED;

ORDER 1–

(5) Individual defendants Donnie Lowe, Kathryn Hernan, and Richard Zurcher are entitled to qualified immunity, and all of plaintiff's claims against these individual defendants are DISMISSED with prejudice;

(6) Plaintiff is directed to SHOW CAUSE by November 21, 2008, why the matters in defendants' requests for admissions should not be deemed admitted for failure to serve timely written answers or objections; and

(7) Plaintiff is directed to SHOW CAUSE by November 21, 2008, why the remaining claims in this case should not be dismissed in light of this Order.

## Background

Plaintiff Jason Schmidt asserts claims against the City of Seattle, Seattle Police Chief Gil Kerlikowske, Seattle Police Lieutenant Donnie Lowe, Seattle Police Detective Kathryn Hernan, and Seattle Police Officer Richard Zurcher in connection with plaintiff's arrest on Fourth Avenue while a rally organized by Act Now to Stop War and End Racism (A.N.S.W.E.R.) was taking place at Westlake Park. A.N.S.W.E.R. applied for and was granted a Special Event Permit to conduct a "Stop the War on Iraq" rally in Westlake Park on Saturday, September 24, 2005. Exhs. 2 & 3 to Carr Decl. (docket no. 20). The Special Event Permit authorized the event to begin at 9:00 a.m., and mandated that it end by 5:00 p.m. Exh. 3 to Carr Decl. The Special Event Permit required A.N.S.W.E.R. to comply with the instructions in the attached Seattle Police Department Parade Permit. *Id.* The Parade Permit allowed A.N.S.W.E.R. to conduct a march along a designated route, beginning and ending at Westlake Park, traveling southbound on Second Avenue to Marion Street and northbound on Fourth Avenue to Pine Street, with no stops along the way. Exh. 4 to Carr Decl. The march was expected to commence at 1:15 p.m.; the time of anticipated conclusion for the march was not expressly stated in the Parade Permit. *Id.*

On September 24, 2005, Officer Richard Zurcher was assigned, as part of a Seattle Police Department ("SPD") bicycle squad, to patrol the A.N.S.W.E.R. event area. Zurcher

ORDER  2–

Decl. at ¶ 1 (docket no. 22).  By about 2:38 p.m., the march had ended and the participants had proceeded to Westlake Park or otherwise dispersed.  *Id.* at ¶ 4; Lowe Decl. at ¶ 5 (docket no. 23).  At roughly 2:45 p.m., Officer Zurcher observed plaintiff meandering down one of the west lanes of Fourth Avenue.  Zurcher Decl. at ¶ 4; Lowe Decl. at ¶ 5.  Westlake Park is on the east side of Fourth Avenue, and plaintiff did not appear to be heading in the direction of the A.N.S.W.E.R. rally.  Zurcher Decl. at ¶ 4.  Plaintiff was not near the participants of the march, and he did not have any obvious impairment that might have inhibited his ability to keep up with the march.  *Id.*; Lowe Decl. at ¶ 5.

According to both Officer Zurcher and Lieutenant Donnie Lowe, who commanded four bicycle squads deployed on September 24, 2005, to escort the A.N.S.W.E.R. march and patrol the rally area, Lowe Decl. at ¶ 1, at the time plaintiff was in the street, northbound vehicle traffic on Fourth Avenue was backed up for blocks.  Zurcher Decl. at ¶ 5; Lowe Decl. at ¶ 5.  In contrast, plaintiff has averred "[a]t no point did I see any large traffic jams caused by the protest," and "I did not see any traffic because the police had blocked traffic well away, at least two blocks away, from the march's end point."  Schmidt Decl. at ¶¶ 12 & 15 (docket nos. 27-2 & 27-3).

Because plaintiff's presence prevented the reopening of Fourth Avenue to vehicle traffic, Officer Zurcher approached plaintiff and asked him to "get out of the street."  Zurcher Decl. at ¶¶ 5-7; *see also* Lowe Decl. at ¶ 7.  After observing Officer Zurcher's unsuccessful attempts to persuade plaintiff to exit the street, Lieutenant Lowe approached, and repeatedly ordered plaintiff to get out of the street.  Lowe Decl. at ¶¶ 6 & 10.  At the time, Lieutenant Lowe was of the opinion that plaintiff could proceed on the adjacent sidewalk, which was a public forum equivalent to the street, and that asking plaintiff to move to the sidewalk would not negatively impact plaintiff's right of free speech.  *Id.* at ¶ 7.  Plaintiff manifested no intent to comply with the requests or directions of Officer Zurcher and Lieutenant Lowe.  Zurcher Decl. at ¶ 9; Lowe Decl. at ¶ 10.  Finally, Lieutenant Lowe

ORDER  3–

asked plaintiff "whether there was anything [he] could say or do that would convince [plaintiff] to leave the street." Lowe Decl. at ¶ 10; *see also* Zurcher Decl. at ¶ 9. Upon plaintiff's negative response, which plaintiff indicates was, "you can tell me what law I'm breaking," Schmidt Decl. at ¶ 24, Lieutenant Lowe instructed Officer Zurcher to arrest plaintiff. Lowe Decl. at ¶ 10; *see* Zurcher Decl. at ¶ 10.

Lieutenant Lowe had no physical contact with plaintiff. Lowe Decl. at ¶ 11. Officer Zurcher engaged only in the physical contact necessary to place plaintiff in handcuffs. Zurcher Decl. at ¶ 11. According to both Officer Zurcher and Lieutenant Lowe, plaintiff never complained about the handcuffs or indicated that he was in any pain. Zurcher Decl. at ¶ 11; Lowe Decl. at ¶ 11. Plaintiff does not dispute that no force was used against him and that he did not bring any issues concerning the handcuffs to Officer Zurcher's or Lieutenant Lowe's attention; he merely accuses the officer of making "the handcuffs so tight that the marks stayed on my wrists for several hours after they were removed." Schmidt Decl. at ¶ 36.

Plaintiff was transported to the West Precinct, where Detective Kathryn Hernan was assigned on September 24, 2005, to process paperwork relating to any arrest made during the A.N.S.W.E.R. event. Hernan Decl. at ¶ 1 (docket no. 21). In preparing an Incident Report, Detective Hernan relied solely on a Booking Data Card completed by Officer Zurcher under penalty of perjury. *Id.* at ¶ 6; *see also* Exh. 1 to Hernan Decl. Detective Hernan was not involved in plaintiff's arrest, and she does not recall having any contact with plaintiff on September 24, 2005. Hernan Decl. at ¶¶ 5 & 7.

Over two years later, on January 23, 2008, plaintiff filed this action, captioning his complaint as alleging "violations of civil rights, false arrest, false imprisonment, malicious prosecution, battery, assault, intentional infliction of emotional distress, [and] negligence." Complaint at 1 (docket no. 1). The body of the complaint contains two counts alleging

ORDER 4–

violation of civil rights pursuant to 42 U.S.C. § 1983: one brought against all individual defendants, and one naming the City of Seattle, Chief Kerlikowske, and Does 1-100.

On September 11, 2008, defendants filed a motion for partial summary judgment, noting it for October 3, 2008. At plaintiff's counsel's request, defendants renoted their motion to October 10, 2008. *See* Carr Supp. Decl. at ¶ 2 (docket no. 26). Thus, plaintiff's response to defendants' motion was due on October 6, 2008. Local Rule CR 7(d)(3). Plaintiff did not file a response until 10:52 p.m. on October 10, 2008, over twelve hours after defendants had filed a reply asking the Court to treat their motion as unopposed. *See* Reply at 2 (docket no. 25) (citing Local Rule CR 7(b)(2) ("If a party fails to file papers in opposition to a motion, such failure may be considered by the court as an admission that the motion has merit.")). Plaintiff combined with his response to defendants' motion a cross-motion for partial summary judgment, but plaintiff did not denominate his document in CM/ECF as a motion and he did not assign a noting date to his cross-motion. In addition, plaintiff did not request an extension or provide any explanation for the untimeliness of his response. In a supplemental reply, filed on the following weekday, Monday, October 13, 2008, which was a holiday, defendants moved to strike plaintiff's untimely response and cross-motion, suggesting that plaintiff could file a separate motion for partial summary judgment at a later date to the extent that the issues were not decided upon defendants' motion. *See* Supp. Reply at 2 (docket no. 29).

**Discussion**

**A.     Motion to Strike**

Plaintiff's counsel has offered no excuse for the late filing of his response brief. The untimeliness of his brief prevented defendants from submitting a reply addressing the merits of plaintiff's response. Because plaintiff's arguments are unavailing, however, striking the response brief and/or allowing plaintiff to submit another cross-motion sometime before the

ORDER  5–

dispositive motions deadline, which is currently January 6, 2009, does not promote judicial economy. The Court therefore denies the motion to strike.[1]

**B.     Summary Judgment Standard**

The Court should grant summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is material if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In support of its motion for summary judgment, the moving party need not negate the opponent's claim, *Celotex*, 477 U.S. at 323; rather, the moving party will be entitled to judgment if the evidence is not sufficient for a jury to return a verdict in favor of the opponent, *Anderson*, 477 U.S. at 249.

When a properly supported motion for summary judgment has been presented, the adverse party "may not rely merely on allegations or denials in its own pleading." Fed. R. Civ. P. 56(e). Rather, the non-moving party must set forth "specific facts" demonstrating the existence of a genuine issue for trial. *Id.*; *Anderson*, 477 U.S. at 256. A party cannot create a genuine issue for trial by asserting "some metaphysical doubt" as to the material facts, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and merely

---

[1] In this case, plaintiff's counsel appears to have made a consistent practice of untimely responses. In their motion for partial summary judgment, defendants request that the Court deem certain matters admitted due to plaintiff's failure to provide answers to requests for admissions within thirty days after service. *See* Motion at 4 (docket no. 19); *see also* Fed. R. Civ. P. 36(a)(3) ("A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection . . . ."). In response, plaintiff alludes to "a clerical error," and states that the requests for admissions have now been denied, presumably meaning that answers were served sometime after defendants filed their motion for partial summary judgment. Response at 12 (docket no. 27). The Court declines to address whether the matters in question should be deemed admitted for purposes of the pending motion for partial summary judgment because, even absent such construed admissions, plaintiff cannot prevail. The Court, however, directs plaintiff to SHOW CAUSE by November 21, 2008, why the matters should not be deemed admitted for purposes of future motions or trial.

ORDER   6–

discrediting the testimony proffered by the moving party will not usually constitute a sufficient response to a motion for summary judgment, <u>Anderson</u>, 477 U.S. at 256-57.

To survive a motion for summary judgment, the adverse party must present affirmative evidence, which "is to be believed" and from which all "justifiable inferences" are to be favorably drawn. <u>Id.</u> at 255, 257. When the record, however, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, summary judgment is warranted. <u>See Miller v. Glenn Miller Prod., Inc.</u>, 454 F.3d 975, 988 (9th Cir. 2006); <u>see also Beard v. Banks</u>, 548 U.S. 521, 529 (2006) ("Rule 56(c) 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting <u>Celotex</u>, 477 U.S. at 322)).

**C.     State Law Claims**

Defendants contend that plaintiff's claims for false arrest, false imprisonment, battery, and assault are barred by the applicable statutes of limitations, which is two years with respect to each cause of action. <u>See</u> RCW 4.16.100; <u>Heckart v. City of Yakima</u>, 42 Wn. App. 38, 708 P.2d 407 (1985) (false arrest). Plaintiff responds that he has not pleaded state law claims. Response at 7 (docket no. 27). Although the body of plaintiff's complaint does not contain specific and/or separate counts under state law, such claims are described in the caption of the complaint. Thus, to clarify matters, the Court grants defendants' motion for partial summary judgment and dismisses the claims of false arrest, false imprisonment, battery, and assault because they are time-barred. Moreover, in light of plaintiff's representation that he is not pursuing any causes of action under state law, the Court sua sponte dismisses plaintiff's allegations of malicious prosecution, intentional infliction of emotional distress, and negligence. Thus, all state law claims are dismissed, and plaintiff shall be limited to the federal causes of action pleaded in his complaint.

ORDER  7–

## D. Qualified Immunity

To withstand the individual defendants' claim of qualified immunity in this case, plaintiff (i) must allege violation of a constitutional right that was "clearly established" at the time of his arrest, and (ii) must raise a triable issue concerning whether the individual defendants could have reasonably believed, perhaps mistakenly, that their respective actions did not abridge a "clearly established" constitutional right. *See* <u>Hydrick v. Hunter</u>, 500 F.3d 978, 988-89, 1000-01 (9th Cir. 2007). The parties devote no attention to the question whether the constitutional rights at issue were "clearly established," instead focusing on whether the individual defendants' conduct was reasonable in light of the circumstances. Plaintiff's underlying theory is that the permit for the A.N.S.W.E.R. march did not expire until 5:00 p.m. on September 24, 2005, and that, by ordering plaintiff out of the street before then, Officer Zurcher and Lieutenant Lowe improperly revoked the permit and violated plaintiff's constitutional rights. Plaintiff's argument lacks merit. Although the Special Event Permit authorized use of Westlake Park from 9:00 a.m. until 5:00 p.m., it did not extend to the use of city streets or any areas outside of Westlake Park. Thus, the 5:00 p.m. deadline has no relevance in this case.

In contrast, the applicable Parade Permit contained no time period of effectiveness; it stated only the assembly or formation time and the starting time of the march. These times, as well as the route of the march, were subject to modification by the Chief of Police "in the interest of vehicular or pedestrian traffic safety." SMC 11.25.020. Such permits are generally not granted for groups of less than 75 people, who can use the sidewalks and "avoid the costs and dangers associated with marching in the street." City of Seattle Special Events Handbook at 45, Exh. 1 to Carr Decl. (docket no. 20). Nothing in the Parade Permit or the Seattle Municipal Code supports plaintiff's contention that, despite the completion of

ORDER 8–

the march, Fourth Avenue had to remain closed to vehicle traffic until 5:00 p.m. or for the additional period of time plaintiff chose to remain in the street.[2]

In comparison, defendants contend that Officer Zurcher and Lieutenant Lowe acted reasonably, given the situation and their knowledge about the Parade Permit. To be entitled to qualified immunity, the individual defendants do not have to prove that probable cause to arrest plaintiff existed; they merely have to show that they reasonably believed their "conduct was lawful, in light of clearly established law and the information [they] possessed at the time." *Fuller v. Jewelry*, 950 F.2d 1437, 1443 (9th Cir. 1991). "[E]ven if the officers were mistaken that probable cause to arrest [plaintiff] existed, they are nonetheless immune from liability if their mistake was reasonable." *Id.* Here, Officer Zurcher, at Lieutenant Lowe's command, arrested plaintiff for pedestrian interference, a misdemeanor, which is defined in relevant part as intentionally walking or standing in a public place "in such a manner as to block passage by another person or a vehicle." SMC 12A.12.015(A)(4), (B)(1), & (C); *see* Exh. 1 to Hernan Decl. (docket no. 21). Based on the undisputed facts, Officer Zurcher had probable cause, or at least a reasonable belief of probable cause, to arrest plaintiff.

Plaintiff asserts that his actions were explicitly exempted from the pedestrian interference provision, which indicates that "[a]cts authorized as an exercise of one's constitutional right to picket or to legally protest, and acts authorized by a permit issued pursuant to the Street Use Ordinance, Chapters 15.02 through 15.50 of the Seattle Municipal Code, shall not constitute obstruction of pedestrian or vehicular traffic."

---

[2] Plaintiff alleges that representatives of A.N.S.W.E.R. had negotiated an agreement whereby SPD would "maintain an open lane of traffic" on Fourth Avenue if the people involved in the event could not fit into Westlake Park. *See* Rainey Decl. at ¶ 16 (docket nos. 27-5 & 27-8); *see also* Cutter Decl. at ¶ 6 (docket nos. 27-4 & 27-9) ("My recollection is that the police agreed to open a lane of traffic on 4th avenue [sic] in the event that the park space became overcrowded."). Assuming such agreement existed, plaintiff has provided no proof that Westlake Park was overcrowded at the time of his arrest, and no evidence that Officer Zurcher or Lieutenant Lowe were aware of such agreement or of any need to keep Fourth Avenue closed or partially closed to vehicle traffic.

ORDER  9–

SMC 12A.12.015(A)(4). Plaintiff's conduct, however, was not taken pursuant to a Street Use Permit, and his defiance of repeated requests to move to the sidewalk could be viewed by a reasonable officer as unrelated to the exercise of any constitutional right. Thus, even if Officer Zurcher and/or Lieutenant Lowe were mistaken about whether the picket or protest exception applied to plaintiff, no triable issue exists concerning whether their decision to arrest plaintiff was reasonable given the situation.

With respect to plaintiff's allegation of excessive force, defendants seek to dismiss the claim because no force, other than placing plaintiff in handcuffs, was used during the course of plaintiff's arrest. In response, plaintiff does not dispute defendants' version of the facts, but argues that the arrest alone, which plaintiff alleges was "false," constituted excessive force. *See* Response at 17-18 (docket no. 27). Because the arrest was premised on probable cause or at least a reasonably mistaken belief of probable cause, it was not "false" or otherwise constitutionally defective, and therefore does not itself support a contention of excessive force.

With regard to Detective Hernan, plaintiff appears to concede that she is entitled to qualified immunity. Plaintiff, however, complains that defendants are "trying to have it both ways" by relying on Detective Hernan's statements concerning what occurred at the scene and by having an "officer who was never at the scene write reports that are then used as evidence." Response at 18 (docket no. 27). Plaintiff ignores well-established law concerning the "collective knowledge" doctrine, also known as the "fellow officer" rule, which requires courts to consider, for purposes of evaluating the constitutionality of a stop, search, or arrest, "'the collective knowledge of all of the officers involved in the criminal investigation although all of the information known to the law enforcement officers involved in the investigation is not communicated to the officer who actually' undertakes the challenged action." *United States v. Ramirez*, 473 F.3d 1026, 1032 & n.6 (9th Cir. 2007) (quoting *United States v. Sutton*, 794 F.2d 1415, 1426 (9th Cir. 1986)). Here, Detective

ORDER 10–

Hernan simply completed an Incident Report, appended to which was a copy of the Booking Data Card prepared by Officer Zurcher, upon which she reasonably and permissibly relied. *See* Exh. 1 to Hernan Decl. (docket no. 21). Her declaration contains no facts concerning what occurred at the scene, but rather expressly states that she was "not out on the street" and "did not witness Mr. Schmidt's arrest." Hernan Decl. at ¶ 5. Thus, defendants have made consistent representations to the Court, and Detective Hernan is entitled to qualified immunity.

**Conclusion**

For the foregoing reasons, the Court GRANTS defendants' motion for partial summary judgment and DISMISSES plaintiff's state law claims, as well as all claims against individual defendants Lieutenant Lowe, Detective Hernan, and Officer Zurcher on the ground of qualified immunity. The Court DENIES plaintiff's cross-motion for partial summary judgment, and DENIES defendants' motion to strike plaintiff's cross-motion and untimely response. The Court, however, directs plaintiff to SHOW CAUSE why the matters in defendants' requests for admissions should not be deemed admitted and why the remaining claims in this case should not be dismissed. Plaintiff's response to this Order to show cause is due by November 21, 2008.

IT IS SO ORDERED.

DATED this 30th day of October, 2008.

                                                  _____
                                                  Thomas S. Zilly
                                                  United States District Judge

ORDER  11–